# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SARAH J. COBB, on behalf of J.C.C., a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION ) ) No. 12-1156-JWL |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security income (SSI) benefits based upon the alleged childhood disability of her minor daughter under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's failure to consider anxiety disorder, the court ORDERS that the decision is REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case.

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.      Background**

Plaintiff applied for SSI benefits on June 18, 2009, alleging disability beginning September 16, 2001. (R. 10, 93-97). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 10, 42-45, 57). Plaintiff's request was granted, and Plaintiff and her mother appeared with counsel for a hearing before ALJ Michael D. Mance on November 3, 2010. (R. 10, 23-24). At the hearing, testimony was taken from Plaintiff and from her mother. (R. 10, 23-41). On January 6, 2011 ALJ Mance issued his decision finding that Plaintiff has not engaged in substantial gainful activity and that she has a severe impairment of depression. (R. 10-12). Nevertheless, he determined that Plaintiff's impairment or combination of impairments does not meet or medically equal a Listed Impairment, and that it does not functionally equal the listings. (R. 12-17). Therefore he determined that Plaintiff has not been disabled within the meaning of the Act at any time since her application was filed, and denied her application for benefits. Id. at 17-18.

Plaintiff sought Appeals Council review of the decision and submitted a brief explaining her allegation of errors in the decision. (R. 92). Nonetheless, the Council found no reason to review the decision and denied Plaintiff's request. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

**II.     Legal Standard**

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)"). Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not

3

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

Disabled children from low-income families may receive SSI benefits under Title XVI of the Social Security Act. McClain v. Barnhart, 299 F. Supp. 2d 309, 314 (S.D.N.Y. 2004). To qualify, the child's income and assets (including those imputed from the child's parents) must fall below a certain amount and she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The child claimant bears the burden of proving that her impairment meets or equals a listed impairment. Hall ex rel. Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000); see also, Porter ex rel. BTP v. Astrue, Civ. A. No. 11-2077-KHV, 2012 WL 1190785, *2 (D. Kan April 9, 2012); Mitchell v. Astrue, No. CIV-10-0864-HE, 2011 WL 2457197, *1 (W.D. Okla. June 20, 2011).

The Commissioner promulgated regulations which establish a three-step sequential evaluation process to decide a childhood disability case. 20 C.F.R. § 416.924; see also, Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237-38 (10th Cir. 2001). In the first step, if the child is engaging in substantial gainful activity, a finding of nondisability is made and the claim is denied. Id. § 416.924(b). If not, the Commissioner continues with the second step to determine whether the child has a medically determinable impairment or combination of impairments which is severe. Id. § 416.924(c). If the child has a

severe impairment, the Commissioner continues with the third and final step, and determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the listings.  Id. § 416.924(d).

An impairment meets a listing if it meets all of the medical criteria contained in a particular listing.  Id. §§ 416.925, 416.926.  An impairment is medically equivalent to a listing if, without considering age, education, or work experience, it is at least equal in severity and duration to the criteria of a listing.  Id. § 416.926.  To be functionally equivalent to the listings, the impairment(s) "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  Id. § 416.926a; see also, Briggs, 248 F.3d at 1238.  An impairment must also meet the duration requirement-- last or expected to last twelve months--before the child may be found disabled.  Id. §§ 416.906, 416.924(d)(1); Davenport v. Apfel, 151 F. Supp. 2d 1270, 1272 (D. Kan. 2001).

To determine functional equivalence, the Commissioner must analyze six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  These domains are:  (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.  Id. § 416,926a(b)(1)(i-vi); see also Briggs, 248 F.3d at 1238 (recognizing the six domains).

In evaluating a child claimant's ability to function in each domain, the Commissioner will seek information to answer the following questions about whether the claimant's activities are typical of other children the claimant's age who do not have impairments: (1) What activities can the claimant perform? (2) What activities is the claimant unable to perform? (3) Which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments? (4) Where does the claimant have difficulty with his/her activities--at home, in child care, at school, or in the community? (5) Does the claimant have difficulty independently initiating, sustaining, or completing activities? (6) What kind of help does the claimant need to do his/her activities, how much help is needed, and how often is the help needed? Id. § 416.926a(b)(2)(i)-(vi).

Functional equivalence will be found only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. Id. § 416.926a(a). A "marked" limitation is "a limitation that is more than moderate but less than extreme." Id. To constitute a "marked" limitation, the claimant's impairment must interfere seriously with his ability to independently initiate, sustain or complete activities. Id. § 416.926a(e)(2)(i). This may mean serious limitation exists in only one activity, or in several activities. Id.

"Extreme" is the rating given the worst limitations, and occurs when a claimant's impairment interferes very seriously with his or her ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(i). An "extreme" limitation does not

necessarily mean a total lack or loss of ability to function, but it is more than "marked." Id.; see also, Briggs, 248 F.3d at 1238 n.1 (stating definitions of "functional equivalency," "marked," and "extreme" limitations).

Plaintiff claims the ALJ failed to explain why he accorded "significant weight" to Dr. Parsons's opinion and yet assessed Plaintiff with less-than-marked limitations in the domain of "attending and completing tasks" despite the fact that Dr. Parsons assessed Plaintiff with marked limitations in that domain. (Pl. Br. 18-19). She also claims the ALJ erred at step two by failing to discuss whether Plaintiff has a medically determinable impairment of anxiety disorder which is "severe" within the meaning of the regulations; erred at step three in finding that Plaintiff's impairment or combination of impairments does not functionally equal the listings; and failed properly to conduct a credibility analysis. Id. at 20-26. The Commissioner argues that the ALJ properly evaluated the severity of Plaintiff's impairments and provided a proper credibility analysis. (Comm'r Br. 12-17). He argues that substantial evidence supports the ALJ's determination that Plaintiff's impairment or combination of impairments does not functionally equal a listing, and that although the ALJ did not address Dr. Parsons's conclusion that Plaintiff has "marked" limitations in the domain of "attending and completing tasks," any error in that regard is harmless because substantial evidence nonetheless supports the ALJ's determination that Plaintiff is not disabled. The court agrees with Plaintiff that the ALJ erred in evaluating Plaintiff's anxiety disorder at step two of the sequential evaluation process. Because on remand the Commissioner must once again apply the process

7

beginning at step two, and because each of the other errors alleged by Plaintiff occurred during the step three analysis, the court will not address those claims of error here. Plaintiff may make her arguments in that regard to the Commissioner on remand.

## III.    Discussion

At step two, the ALJ found that depression has more than a minimal impact on Plaintiff's functioning, and is therefore a "severe" impairment. (R. 12). The ALJ mentioned Plaintiff's anxiety in his step three evaluation of whether Plaintiff's impairment or combination of impairments functionally equals the listings. First, he summarized treatment records by Plaintiff's counselor Ms. Petrik,[2] noting that Plaintiff cannot spend the night away from her mother without anxiety; but noting that although the family describes severe depression and anxiety, those symptoms are not present on a one-to-one basis. (R. 14). He also recognized Ms. Petrik's note that "separation anxiety" was being considered as a diagnosis for Plaintiff. Id.

Next, the ALJ summarized the records of Dr. Bingle, particularly noting that Plaintiff's family "had limited insight into the fact that economic stressors and limited stimulation can contribute to symptoms of anxiety and depression. (R. 14). When assessing the domain of "interacting and relating with others," the ALJ noted:

> Dr. Bingle's medical record indicates the claimant has shown anxiety in the past when her mother is asked to leave the room during therapy. As noted

---

[2]The ALJ calls Plaintiff's counselor "Ms. Patrick," but Plaintiff calls her Ms. Petrik, and the record reveals that the counselor is "Amanda R. Petrik, LPC." (R. 235). The court will refer to her as Ms. Petrik.

8

> above, Dr. Bingle and the claimant's counselor have considered changing the claimant's diagnosis to one of separation anxiety. This anxiety could affect the claimant's ability to interact and relate to others.

(R. 16).

Plaintiff points to "anxiety disorder" diagnoses by both Ms. Petrik (R. 235-36) and Dr. Bingle (R. 241-42), and claims the ALJ erroneously did not recognize anxiety disorder as a medically determinable impairment in the circumstances of this case, and did not evaluate whether it is "severe" within the meaning of the Act. (Pl. Br. 20-22). She argues that this is error requiring remand. (R. 22). The Commissioner recognizes that the ALJ did not find that anxiety disorder was a severe impairment, but argues that reversal is not required because the ALJ found that Plaintiff has a severe impairment (depression) at step two and considered all of her impairments, both severe and non-severe, at step three. She asserts that reversal is not required as long as the ALJ considered the effects of all of the claimant's medically determinable impairments, and argues that the ALJ mentioned Plaintiff's anxiety multiple times in his step three analysis. (Comm'r Br. 13) (citing Hill v. Astrue, 289 F. App'x 289, 291-92 (10th Cir. 2008)).

As the Commissioner admits, the ALJ said nothing about anxiety disorder being a severe impairment in this case. But, the Commissioner misses the finer point that the ALJ did not specifically recognize anxiety disorder as a medically determinable impairment in the facts of this case. The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects "of all of the claimant's medically determinable

9

impairments, both those he deems 'severe' and those 'not severe.' " Hill, 289 F. App'x at 291-92. Moreover, while limitations attributed to impairments which are medically determinable but are not severe <u>must be</u> considered at later steps in the evaluation, alleged limitations attributable to impairments which are <u>not</u> medically determinable <u>must not be</u> considered at later steps. 20 C.F.R. §§ 416.908, 416.923; <u>see also</u>, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); <u>Gibbons v. Barnhart</u>, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted).

Because the ALJ did not specifically find that anxiety disorder is a medically determinable impairment in this case, the court cannot tell whether he included that impairment in his step three consideration of whether Plaintiff's condition meets or equals a listing. The Commissioner attempts to overcome this deficiency by pointing out that "the ALJ mentioned anxiety multiple times at step three of the sequential evaluation process." (Comm'r Br. 13). However, although the ALJ mentioned anxiety several times in his step three analysis, he never mentioned "anxiety disorder." Each time the ALJ mentioned anxiety, he mentioned it as a symptom Plaintiff experiences, not as an impairment from which she suffers. (R. 14, 16). This is significant because the court cannot tell whether the ALJ recognized that Dr. Bingle and Ms. Petrik diagnosed Plaintiff with anxiety disorder, or whether he merely viewed anxiety as one of the symptoms she feels as a result of her depression. The court cannot tell whether the ALJ found that

10

anxiety disorder is not medically determinable in the circumstances of this case, whether he found that the disorder is merely not severe in the circumstances of this case, or whether he simply missed the fact that the mental health care providers had diagnosed that disorder.

This ambiguity is heightened by the fact that the ALJ stated that Ms. Petrik was considering a diagnosis of "separation anxiety" for Plaintiff (R. 14), and that "Dr. Bingle and the claimant's counselor have considered changing the claimant's diagnosis to one of separation anxiety." (R. 16). Because the ALJ recognized depression as Plaintiff's only impairment, his discussion of "changing the claimant's diagnosis" suggests that the providers were contemplating changing Plaintiff's diagnosis from "depressive disorder" to "separation anxiety." However, both providers diagnosed Plaintiff with "anxiety disorder" and made only a provisional diagnosis or a "rule out" diagnosis of "depressive disorder." (R. 236, 241). Thus, it would appear that the providers were contemplating changing the main diagnosis from "anxiety disorder" to "separation anxiety." Moreover, the ALJ did not even discuss whether the providers had ruled out depressive disorder, and the fact that he found depression as Plaintiff's only impairment suggests he found that they did not "rule out" that diagnosis.

In these facts and circumstances, the court is simply unable to ascertain the ALJ's evaluation of Plaintiff's impairments and whether he recognized anxiety disorder as a medically determinable impairment or included it in his consideration of whether

Plaintiff's condition functionally equals the listings. Remand is necessary for the Commissioner to consider Plaintiff's impairments properly.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for proceedings consistent with this opinion.

Dated this 24th day of April 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**